902 So.2d 361 (2005)
Barry HORNSBY and Larry Hornsby
v.
BAYOU JACK LOGGING, et al.
No. 2004-C-1297.
Supreme Court of Louisiana.
May 6, 2005.
*362 Dazat, Falgoust, Caviness and Bienvenu, LLP, Jerry Joseph Falgoust, Opelousas, LA, Penny & Hardy, Christopher Shannon Hardy, Counsel for Applicant.
Frederick L. Welter, APLC, Frederick Lewis Welter, Rayne, LA, Counsel for Respondent.
TRAYLOR, Justice.
This matter arises out of the unlawful cutting and removal of trees without landowner consent. We granted certiorari to consider (1) whether the landowners in this case are entitled to recover restoration costs under La.Civ.Code art. 2315 where the cost of restoration exceeds the value of the property prior to the cutting; or (2) *363 whether, under the facts of this case, the landowners are limited to recovery of treble damages under La.R.S. 3:4278.1. For the reasons that follow, we conclude that under the facts of this case, recovery for restoration costs under La. Civ.Code art. 2315 was an inappropriate measure of damages and that the appropriate measure of damages for these landowners is three times the fair market value of the trees cut in accordance with La.R.S. 3:4278.1.

FACTS AND PROCEDURAL HISTORY
In June 2001, Kenneth Guilliot, doing business as Bayou Jack Logging (hereinafter referred to as "Bayou Jack"), contracted with individual landowners in the Roberts Cove area of Acadia Parish to conduct logging operations on their properties. Two brothers, Larry and Barry Hornsby (hereinafter "Hornsbys"), and Douglas and Bernadette Guidry (hereinafter "Guidrys") owned tracts of land in the Roberts Cove area, but never entered into the contractual agreement with Bayou Jack.
During the logging operations, Bayou Jack crossed over the property lines of the Hornsbys and Guidrys' tracts and inadvertently felled and removed trees without their consent.[1] All parties agree that Bayou Jack was in good faith at the time the trees were cut and removed from the properties.
The Hornsbys and Guidrys filed suit against Bayou Jack, seeking recovery for property damage caused by Bayou Jack's unauthorized cutting and removal of trees from their property.[2] In their petition, plaintiffs alleged that Bayou Jack negligently cut and removed trees from their property in violation of La. R.S. 3:4278.1.[3] Plaintiffs' prayer for relief contained a request for "all general and equitable relief." Bayou Jack answered the petition with a general denial. In a pre-trial memorandum plaintiffs claimed that, in addition to La. R.S. 3:4278.1, they were also entitled to general tort damages under La. Civ.Code art.2315.[4] In response, Bayou Jack *364 specifically objected to plaintiffs' assertions that they were entitled to additional damages under La. Civ.Code art. 2315.
At trial, the Hornsbys testified that they purchased the land from family members and that they planned to build on the land. Larry Hornsby planned to build his retirement home and Barry Hornsby planned to build a weekend camp. The Guidrys testified that they purchased the land from Mrs. Guidry's relatives and that they too planned to build their retirement home on the land. In addition, the Guidrys' asserted a portion of their property was intended as a home site for their daughter and son-in-law.
The plaintiffs presented expert testimony regarding the value of the land prior to the trees' removal, the value of the cut timber and what it would cost to replace the cut trees to restore the property to its former state. Plaintiffs' real estate appraiser, Fred Gossen testified that the value for the entire 38.2 acre tract before the damage occurred would be between $2,759 to $3,925 per acre. He also testified that the value of vacant open land in that area would be between $1,600 and $1,900 per acre, and the value for wooded areas would be between $5,400 and $9,200 per acre. Mr. Gossen further explained that he could not value the land as it is now because he did not know the extent of the damage nor what it would cost to have the damage repaired.
Plaintiffs also presented forestry expert Bruce Willis who provided a value for both the ornamental and shade trees cut and removed as well as the timber value of the trees cut and removed. He estimated the ornamental and shade trees were valued at $94,979.12 for the Hornsbys' property and $115,439.20 for the Guidrys' property. With respect to the timber value, Mr. Willis estimated the value to be $10,507.89 for the Hornsbys' property and $12,021.40 for the Guidrys' property.
Plaintiffs also presented the expert testimony of arborist Robert Thibodeaux. One theory of valuation utilized by Mr. Thibodeaux was the "six-inch replacement method." Using this replacement method, Mr. Thibodeaux estimated the cost to restore the property for the Hornsbys' property to be $224,000 and $154,000 for the Guidrys' property.[5]
Defendant presented forestry expert and real estate appraiser Warren Peters, who testified as to the value of the timber and the value of the land. He opined that the Hornsbys' property with trees is valued at $1,500 per acre and the Guidrys' property with trees is valued at $1,000 per acre. Furthermore, he testified that the Hornsbys' property without trees is valued between $1,300 and $1,400 per acre, while the Guidrys' property without trees is valued at $900 per acre.
The district court based its decision largely upon the expert testimony regarding restoration. Thus, consistent with the expert testimony, the district court awarded the Hornsbys $224,000 for restoration costs and the Guidrys were awarded $154,000 for restoration costs. Both awards were subject to a reduction of twenty (20%) percent for comparative fault due to plaintiffs' failure to delineate the boundaries of their properties by putting up a fence.
All parties appealed the district court's judgment. The court of appeal affirmed the judgment of the district court as to the type of damages to which plaintiffs were *365 entitled, together with the district court's assessment of the amount of damages plaintiffs should be awarded.[6] However, the court of appeal reversed and set aside the judgment, insofar as it found that plaintiffs were comparatively negligent in causing damage to their property. We granted certiorari to consider the propriety of the court of appeal's decision.[7]

LAW AND DISCUSSION
The sole issue for review is the proper measure of damages due a landowner whose timber was removed without consent. One injured through the fault of another is entitled to full indemnification for damages caused thereby. Coleman v. Victor, 326 So.2d 344 (La.1976). Consequently, "when property is damaged through the legal fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the damage." Id. at 346.
This court has previously held that a landowner whose timber has been removed without his consent may recover pursuant to La. R.S. 3:4278.1 or under general tort principles set forth in La. Civ.Code art. 2315. First South Production Credit Ass'n v. Georgia-Pacific, 585 So.2d 545 (La.1991). The damage calculation under La. R.S. 3:4278.1 is clear and unambiguous. If the violator is found to be in good faith, the court need only determine the fair market value ("FMV") of the trees and multiply the FMV by three to arrive at a damage award. However, damage calculation under La. Civ.Code article 2315, when restoration is the objective, is not as straightforward. Calculation of damages under La. Civ.Code art. 2315 involves consideration of factors which must be determined in light of the particular facts and circumstances of the case.
In Roman Catholic Church of the Archdiocese of New Orleans v. Louisiana Gas Service Company, 618 So.2d 874, this court addressed the issue of restoration costs under La. Civ.Code art. 2315. In Roman Catholic, we were called upon to determine whether the lower court erred by limiting plaintiffs' damages to replacement cost, less depreciation, rather than awarding the plaintiffs the full cost of restoration. Under the facts of that case, the court found that a damage award under La. Civ.Code art. 2315 which exceeds the value of the property is not impermissibly excessive where the owner is able to articulate "personal reasons" which justify the higher award. Due to the district court's reliance on Roman Catholic, the underlying facts of the case bear repeating.
In Roman Catholic, the Archdiocese of New Orleans purchased an apartment complex from the Department of Housing and Urban Development ("HUD"). The agreement between HUD and the Archdiocese was that the Archdiocese would maintain the complex and house 200 low income families. A resolutory condition was added to the purchase contract which required the Archdiocese to continuously maintain the complex for low income rental for 200 families during the next fifteen years or the property would revert back to HUD. The Archdiocese purchased the property on these terms in order to further its interest in providing housing for poor families affiliated with its newly placed parish church. Id. at 875.
*366 Thereafter, a fire occurred in one of the complex's buildings caused by a malfunction of a gas regulator owned by the gas supplier. The gas supplier conceded liability and the case was tried solely on the issue of damages. The district court determined that since the cost of restoration exceeded the market value of the property before the damage, the Archdiocese's recovery was limited to the amount of money expended to restore the building to its pre-fire condition but reduced by depreciation. This court reversed, finding that the Archdiocese was entitled to recover the full extent of the restoration cost. In making the determination, we emphasized the principle that an owner should be restored to his original state if he is able to articulate "personal reasons" which would justify restoration cost in excess of the value of the property. We explained:
"[w]e conclude that, as a general rule of thumb, when a person sustains property damage due to the fault of another, he is entitled to recover damages including the cost of restoration that has been or may be reasonably incurred, or, at his election, the difference between the value of the property before and after the harm. If, however, the cost of restoring the property in its original condition is disproportionate to the value of the property or economically wasteful, unless there is a reason personal to the owner for restoring the original condition or there is a reason to believe that the plaintiff will, in fact, make the repairs, damages are measured only by the difference between the value of the property before and after the harm. Consequently, if a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building." Roman Catholic, 618 So.2d at 879-880.
The court found that the Archdiocese would not be able to facilitate its objective in acquiring the complex if the award was limited and it could no longer provide housing. Specifically, the Archdiocese's goal was to provide housing for 200 low income parishioners and it could only comply with the resolutory condition in the purchase contract if the apartments were occupied by 200 poor families. The court concluded by articulating the following guideline in choosing between the cost of repair and some other measure of damages: "[i]t is important to know how the property is used and what interest in it is asserted, so that the measure can be adapted that will afford compensation for any legitimate use that the owner makes of his property." Roman Catholic, 618 So.2d at 880.
In the instant case, the district court applied the test of Roman Catholic and concluded that plaintiffs exhibited "personal reasons" which justified an award exceeding the value of the property. We now review the propriety of that ruling.

Standard of Review
An appellate court may not set aside a district court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993). In order to reverse a factfinder's determination of fact, an appellate court must review the record in its entirety and meet the following two-part test: (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Stobart, 617 So.2d at 882. On review, an appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently. Ambrose v. *367 New Orleans Police Dept. Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221. However, this court clarified in Ambrose that our purpose in Stobart was not "to mandate that the district court's factual determinations cannot ever, or hardly ever, be upset." Ambrose, 639 So.2d at 221. Recognizing that great deference should be accorded to the fact finder, the court of appeal and this Court have a constitutional duty to review facts. Id. To perform its constitutional duty properly, an appellate court must determine whether the district court's conclusions were clearly wrong based on the evidence or are clearly without evidentiary support. Id.

Recovery under general tort principles
Under Louisiana Civil Code article 2315, a person may recover damages for injuries caused by a wrongful act of another.[8] Article 2315 provides: "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." A person injured by trespass or fault of another is entitled to full indemnification for the damages causes. In Coleman v. Victor, 326 So.2d 344 (La.1976), we explained the theory behind the principle of restoration of property damaged by another under general tort principles. Specifically, we stated:
"In assessing damage to property, generally, courts have considered the costs of restoration as the proper measure of damage where the thing damaged can be adequately repaired.... No mechanical rule can be applied with exactitude in the assessment of property damage under La.Civ.Code art. 2315. Each case must rest on its own facts and circumstances as supported by the proof in the record." Coleman, 326 So.2d at 346-47.
While the primary objective is to restore the property as nearly as possible to the original state, at times restoration is not possible and is sometimes not cost effective.
In the case sub judice, the district court awarded plaintiffs damages which exceed the value of their property. In his reasons for judgment, the trial judge found that plaintiffs' emotional ties to the land justified an award greater than the value of the property. Specifically, he stated:
"[t]he Hornsbys have a significant emotional tie to this land. They spent significant considerable time in these woods. They referred to this particular section of the land where these trees were removed from as the "oak flat." They planned to place a home site and a camp near this area known asthat they knew as the "oak flat." And further, they planned to transmit this land to their descendants while maintaining it in pristine condition. I find that Mr. Guidry planned to allow his daughter to *368 use the portion of his land from which trees were removed as a home site and he planned to occupy the eastern portion of his land in his retirement years which are fast approaching. For those reasons, I find that the Hornsbys and the Guidrys had reasons that are personal to them for restoring the land to its original condition. And I also find that there's reason to believe that the plaintiffs will, in fact, make these repairs with the money collected from this judgment."
Thus, the district court judge determined that plaintiffs had significant emotional ties to their land which justified an award of $224,000 for the Hornsbys and $154,000 for the Guidrys, which exceeded the value of the land. Keeping the manifest error standard of review in mind, we find that the record reveals insufficient evidence was presented which would justify the award of the district court.
Barry Hornsby and his brother, Larry, purchased their land in 1994 from their grandparents' estate for $19,932.00. Barry testified that when he was a child, he and his cousins would play on the property every Sunday. However, since purchasing the property in 1994, Barry admits that the land has primarily been used for cattle grazing. He stated that there are no utility lines, water lines, or structures on the land. Moreover, no one has taken any steps to facilitate the building of any structures or camps. Larry Hornsby also testified that he does not have a homestead exemption on the property and he confirmed Barry's statement that there are no water lines or electricity on the property. Larry also stated that, since their purchase of the property, no homes, sheds or structures have been built on the land. Both brothers testified of their intent to build, at a future date, but failed to produce any tangible proof or documentation to support their intent.
Douglas Guidry purchased his land from his wife's aunt in 1976 for $750.00. On the land is a pipeline which runs throughout. Mr. Guidry testified that he bought the land because of the oak trees, planned to build a house on the east side of the land and dig a big pond and allow his daughter to build a pond on the west side. However, Mr. Guidry admits that he has not been on the property in fifteen years and has not made any improvements to the land. He stated that he has allowed the Hornsbys to graze the land in previous years and allowed chicken trees to grow on the majority of the property.
Where objective evidence so contradicts the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, 549 So.2d 840, 845 (La.1989). We find the district court's finding that the testimony supported the award was manifestly erroneous and not supported by the facts presented at trial. Expert testimony was presented at trial regarding the value of plaintiffs' property. Based upon that testimony, it is clear that the value of the property was disproportionate to the damage award rendered by the district court. Under the precepts enunciated in Roman Catholic, restoration costs which exceed the value of the property, are justifiable only when there are "reasons personal to the owner." In this matter, plaintiffs' testimony reveals their intent to develop the land at some point in the future. We do not find that plaintiffs' self-serving testimony of their inchoate intent to develop the land at some undetermined future point is sufficient to justify recovery of restoration costs in excess of *369 the actual market value of the land and the trees cut. Consequently, we find that the district court's reliance on Roman Catholic in awarding plaintiffs restoration costs exceeding the market value of the land and trees under the principles of general tort law was in error.

La. R.S. 3:4278.1
Plaintiffs sought recovery for damages under two theories, La. Civ.Code art. 2315 and the timber trespass statute set forth in La. R.S. 3:4278.1. La. R.S. 3:4278.1. formerly La.R.S. 56:1478.1[9], was enacted by the legislature to impose a penalty upon those who disregard the property rights of timber owners. Morgan v. Fuller, 441 So.2d 290, 296 (La.App. 2 Cir.1983), writs denied, 443 So.2d 596 (La.12/16/83); Smith v. Myrick, 412 So.2d 677 (La.App. 2 Cir.1982). The statute imposes a penalty of three times the fair market value of the trees on those persons who unlawfully cut, fell, destroy, remove, or divert trees from landowners' property without their consent, as follows:
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without consent or direction of the owner or legal possessor of the trees.
Consequently, La.R.S. 3:4278.1 is a punitive statute. Statutes which authorize the imposition of a penalty are to be strictly construed.
Moreover, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written. La.Civ.Code art 9. In such cases, no further interpretation may be made in search of the intent of the legislature. Id. There is no ambiguity in La.R.S. 3:4278.1. Under the plain language of statute, a person who is found to have unlawfully cut and removed trees belonging to another without consent is liable to the owner for three times the fair market value of the timber taken. A good faith trespasser is liable for the statutory treble damages only if circumstances prove that he should have been aware that his actions were without consent or direction of the owner or legal possessor of the timber. It is only when a person clearly violates its provisions that he will be assessed the penalty of treble damages. Callison v. Livingston Timber, Inc, XXXX-XXXX (La.App. 1 Cir. 5/9/03), 849 So.2d 449; Howes v. Rocquin, 457 So.2d 1220, 1222 (La.App. 1 Cir. 10/9/84); Shaffett v. Vicks, 385 So.2d 419 (La.App. 1 Cir.1980).
In the instant case, a review of the record reveals that it is undisputed that Bayou Jack cut and removed trees from the plaintiffs' property without their consent. Also undisputed are the district court and court of appeal findings that Bayou Jack was in good faith when it cut the trees on plaintiffs' land, and that it is liable for damages. Thus, considering the undisputed facts presented in this case, along with the application of strict construction of the statute, we find that Bayou Jack was in clear violation of La.R.S. 3:4278.1, and that plaintiffs are entitled to damages of three times the fair market value of the trees cut.

Fair Market Value of the Trees Cut
Having determined that La.R.S. 3:4278.1 is the appropriate measure of damages recoverable by plaintiffs, we must now determine the proper assessment of damages *370 pursuant to the statute. Forestry expert Bruce Willis testified as to the size, number, and types of trees cut from plaintiffs' property. He estimated the value of the timber to be $10,507.89 for the Hornsbys, and $12,021.40 for the Guidrys. Thus, in accordance with the strict application of La.R.S. 3:4278.1 and based on expert testimony as to the value of the trees cut, we find that the Hornsbys are entitled to recover $31,523.67 (three times the timber valued at $10,507.89), and the Guidrys are entitled to recover $36,064.20 (three times the timber valued at $12,021.40).

Comparative Fault
Bayou Jack has also asserted that the court of appeal erred in reversing the district court finding of 20% fault on the part of the plaintiffs. Because of our holding that restoration costs pursuant to La.Civ.Code art. 2315 were an inappropriate measure of damages in this case, we pretermit any discussion of the allocation of fault. Plaintiffs' damage award, and Bayou Jack's liability, are set at the treble damages determined in accordance with La.R.S. 3:4278.1.

CONCLUSION
Based upon the foregoing, we reverse the court of appeal's decision affirming the award of restoration costs in the amount of $224,000 for the Hornsbys and in the amount of $154,000 for the Guidrys. We hold that the appropriate award of damages in this case is three times the fair market value of the trees cut, in accordance with La.R.S. 3:4278.1. Thus, the Hornsbys are awarded treble damages under La. R.S. 3:4278.1 in the amount of $31,523.67, and the Guidrys are awarded $36,064.20.
REVERSED AND RENDERED.
KIMBALL, J., dissents and assigns reasons.
WEIMER, J., concurs and assigns reasons.
CALOGERO, C.J., concurs for reasons assigned by WEIMER, J.
KNOLL, J., dissents for reasons assigned by KIMBALL, J.
KIMBALL, J. dissents.
I dissent from the majority's conclusion that the trial court's award of restoration costs was an inappropriate measure of damages. We have previously stated that "[i]f ... the cost of restoring the property in its original condition is disproportionate to the value of the property or economically wasteful, unless there is a reason personal to the owner for restoring the original condition or there is a reason to believe that the plaintiff will, in fact, make the repairs, damages are measured only by the difference between the value of the property before and after the harm." Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Serv. Co., 618 So.2d 874, 879-80 (La.1993) (emphasis added). In the instant case, the district court found that plaintiffs had reasons personal to them for restoring the land to its original condition. Additionally, the district court separately determined that there was reason to believe that plaintiffs will, in fact, restore the land with any award collected from defendants. Thus, the district court found plaintiffs satisfied both of the alternative bases for the award of restoration costs in excess of the value of the property. In my view, both of these factual conclusions of the district court are supported by the record and are not manifestly erroneous.
Although the majority recognizes that plaintiffs' testimony reveals their intent to develop the land at issue in the future, it concludes that their "self-serving testimony of their inchoate intent to develop the *371 land at some undermined future point" is insufficient to justify their recovery of restoration costs in excess of the actual market value of the land and the trees cut. Op. at 368. By finding plaintiffs' testimony insufficient to support the district court's award of restoration costs, the majority has imposed an additional evidentiary burden on plaintiffs that has not heretofore been applied. The district court found as a matter of fact that plaintiffs held the requisite intent to support an award of restoration costs that exceeded the actual market value of the land. In my view, this factual finding of the district court, like any other, is subject to the manifest error standard of review. The record contains no evidence to contradict plaintiffs' testimony and discloses no manifest error on the part of the district court.
Additionally, the district court determined that plaintiffs will, in fact, restore the property should restoration costs be awarded to them. In my view, this factual determination was supported by the record and should not be disturbed. While this is another ground upon which to justify the district court's award of restoration costs, the majority does not mention this factual finding in its analysis.
Having determined that the measure of damages used by the district court was not in error, I would review its calculation of restoration costs under the appropriate abuse of discretion standard.
WEIMER, J., concurring.
I concur in the result.
I agree with the majority that plaintiffs failed to satisfy their burden of proof to recover damages in accordance with Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Service Company, 618 So.2d 874, 879-880 (La.1993). Although full replacement damages were not proven in accordance with the criteria of Roman Catholic Church of Archdiocese of New Orleans, the plaintiffs are not automatically relegated to collecting damages pursuant to LSA-R.S. 3:4278.1. There are other measures of damage pursuant to LSA-C.C. art. 2315 that may apply in a given case. However, in this case, the plaintiffs would opt to recover pursuant to LSA-R.S. 3:4278.1.
Louisiana Revised Statutes, Title 3 addresses agriculture and forestry. Section 4278.1 is entitled "Trees, cutting without consent; penalty." This statute is penal in nature and, like any other penal statute, must be strictly construed. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 46; International Harvester Credit v. Seale, 518 So.2d 1039, 1041 (La.1988).
Because the statute is penal and strictly construed, the fair market value of trees referenced in the statute is limited to the fair market value of trees as timber.
Further, considering the placement of LSA-R.S. 3:4278.1 within the revised statutes, the statute was primarily designed to protect those with interests in trees from loggers who entered upon property to harvest timber unlawfully. The focus of LSA-R.S. 3:4278.1 is on trees as timber, not the increase in value trees provide to real estate upon which they are located. Thus, recovery under the statute is limited to the fair market value of the tree as timbernot damages otherwise ordinarily associated with Article 2315 such as restoration value, mental anguish, or diminution in value of the real estate. Although restoration value is not available pursuant to LSA-R.S. 3:4278.1, there is nothing in the language of the statute to prevent the application of the statute in a case involving a stately or ornamental tree with substantial sentimental value in a residential front yard. However, pursuant to LSA-R.S. *372 3:4278.1, one would be limited to the fair market value of the tree as timber, plus potentially treble damages, plus attorney fees.
To summarize, a plaintiff may bring an action for damage to trees alleging, in the alternative, damages pursuant to Article 2315 or LSA-R.S. 3:4278.1 due to a tree being cut, felled, destroyed, removed, or diverted. However, one cannot combine Article 2315 damages and the treble damages allowed by LSA-R.S. 3:4278.1 as to the value of a tree because that would result in duplication of damages. Recovery can only be had for the value of the tree based on one provision or the other, not both. If one proceeds under LSA-R.S. 3:4278.1, damages are limited to the fair market value of the tree as timber. The treble damage provision would be triggered provided there is adequate proof of the defendant's actions being willful and intentional or if there is good faith, but circumstances prove the party engaged in damaging the trees should have been aware his actions were without the consent or direction of the owner or possessor of the trees. Attorney fees are also potentially due. Alternatively, if one proceeds under Article 2315, the full measure of damages is available depending upon the facts and circumstances of each case, but treble damages are not available.
In this matter, the plaintiffs have a right to pursue either LSA-C.C. art. 2315 damages sustained as a result of the unauthorized cutting of trees on their property or recovery of treble damages for the fair market value of the timber pursuant to LSA-R.S. 3:4278.1. However, the plaintiffs are limited to one recovery for the value to the treeseither Article 2315 damages or treble damages, not both. Pursuit of treble damages for the fair market value of the timber pursuant to LSA-R.S. 3:4278.1 did not preclude plaintiffs from the right to pursue damages such as mental anguish or damage to the property itself (i.e. damage to ditches, drainage, fences) which they may have sustained because of the unauthorized cutting of the trees.
Evidence in this case, however, was insufficient to support an award for those items of Article 2315 damages[1] that would exceed the amount of damages the plaintiffs would recover pursuant to LSA-3:4278.1 as found by the majority. In this case, plaintiffs would opt to recover pursuant to LSA-R.S. 3:4278.1 because that provision maximizes their recovery.[2]
NOTES
[1] The Hornsby tract consisted of 33.2 acres of which 3.2 acres of timber was cut, and the Guidry tract consisted of 5 acres of which 1.5 acres of timber was cut.
[2] These individual lawsuits were later consolidated for trial on the merits.
[3] Louisiana Revised Statutes 3:4278.1, provides in part:

A. It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney's fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees.
D. If a good faith violator of Subsection A fails to make payment under the requirements of this Section within thirty days after notification and demand by the owner or legal possessor, the violator shall also be responsible for the reasonable attorney fees of the owner or legal possessor.
[4] Louisiana Civil Code art. 2315 provides in part:

A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
[5] For the Hornsby property, this estimate was based on 160-six inch replacement trees at a cost of $1,400 per tree, and 110-six inch replacement trees for the Guidrys at $1,400 per tree.
[6] Hornsby et al. v. Bayou Jack Logging, et al. 03-1544 (La.App. 3 Cir. 5/5/04), 872 So.2d 1244 consolidated with Guidry, et al v. Bayou Jack Logging, et al., 03-1545 (La.App. 3 Cir. 05/05/2004), 872 So.2d 1244
[7] Hornsby et al v. Bayou Jack Logging, et al, 04-1297 (La.10/14/04), 883 So.2d 1040.
[8] In order to recover under La. Civ.Code art. 2315, a plaintiff must satisfy all the elements of negligence. Negligence cases are resolved under the duty/risk analysis which entails five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) whether the plaintiff was damaged (the damages element). Benjamin ex rel. Benjamin v. Housing Authority of New Orleans, 04-1058 (La.12/1/04), 893 So.2d 1 citing Perkins v. Entergy Corp., 00-1372 (La.3/23/01), 782 So.2d 606, 611. Bayou Jack concedes that it inadvertently cut and removed plaintiffs trees without their consent. At trial, the district court found that Bayou Jack was in good faith. Thus, in this court, the record reflects that all the elements of negligence were met and the sole remaining issue before us is the measure of damages.
[9] Originally enacted by Act 1974, No. 692 § 1, redesignated as La.R.S. 3:4278.1 in 1987.
[1] Fred Gossen, plaintiffs' real estate appraiser, testified that vacant open land in the area was worth $1,600 to $1,900 per acre and wooded areas would be valued at $5,400 to $9,200 per acre. Using the higher figures, plaintiffs' properties lost value of $7,300 per acre. The Hornsbys' loss would be valued at $21,900 for three acres and the Guidrys' loss valued at $10,950 for one and a half acres. Although these plaintiffs have a right to also pursue damages for mental anguish because of their sentimental attachment to this property, it is my belief such damages, even coupled with the lost value award, would be less than the timber value trebled.
[2] Although the trial court found the defendant in good faith, the court specifically found "he should have been aware that he did not have the consent of the Hornsbys and the Guidrys to remove those trees," thus triggering the treble damages portion of the statute. Pursuant to the statute, attorney fees are potentially due. However, that issue was not pursued or addressed on appeal and is not before this court.