952 So.2d 27 (2006)
Troy ROBICHAUX, Shannon Robichaux, Michael J. Tuminello, Sr., and Olive D. Tuminello
v.
STATE of Louisiana, Through the DEPARTMENT OF HEALTH AND HOSPITALS and Through the Department of Environmental Quality and Dow Chemical Company.
No. 2006 CA 0437.
Court of Appeal of Louisiana, First Circuit.
December 28, 2006.
Rehearing Denied February 14, 2007.
*30 Donald T. Carmouche, Victor L. Marcello, John H. Carmouche, Gonzales, Counsel for Plaintiffs/Appellees Troy Robichaux, Shannon Robichaux, Michael J. Tuminello, Sr., and Olive D. Tuminello.
F. Barry Marionneaux, F. Charles Marionneaux, Plaquemine, David M. Bienvenu, Jr., John Michael Parker, Baton Rouge, Counsel for Defendants/1st Appellants The Dow Chemical Company and Ivy Dupree.
William M. Hudson, Patrick B. McIntire, Lafayette, Counsel for Defendant/2nd Appellant Louisiana DHH & DEQ.
Robert M. Kallam, Jennifer A. Wells, Lafayette, Counsel for Defendant/3rd Appellant Industrial Haulers, Inc.
Before: PETTIGREW, DOWNING, and HUGHES, JJ.
HUGHES, J.
This appeal by Defendants, The Dow Chemical Company (Dow), Ivy Dupree, the State of Louisiana through the Department of Health and Hospitals and the Department of Environmental Quality, and Industrial Haulers, Inc.,[1] raises a number of assignments of error in the trial court's class certification on behalf of the Plaintiffs under Louisiana Code of Civil Procedure Article 591(A) & (B)(3). Plaintiffs, through representatives Troy Robichaux, Orris Dupuy, Sr., and Marva L. Fefee, have answered Defendants' appeal and lodged a cross-appeal seeking simultaneous certification under Article 591(B)(1), (2), and (3). For the reasons that follow, we affirm.

I. FACTS AND PROCEDURAL HISTORY
This suit arises out of purported groundwater contamination in Iberville Parish. The Louisiana Department of Health and Hospitals performed routine periodic testing of well water near or in the vicinity of Plaintiffs' property in 1997 and 1998 that revealed vinyl chloride levels in excess of applicable federal drinking water standards.[2] These test results were apparently not reported to the public until elevated levels in test results from February 2001 alerted the Department to review its records. At that point, the Louisiana Department of Environmental Quality took action to cut off use of the contaminated water and notify residents and property owners of the problem.
Plaintiffs filed suit in March 2002, alleging that the Louisiana Department of Environmental Quality and the Department of Health and Hospitals (State Defendants) were negligent in their failures to (1) report and warn class members of the 1997 and 1998 test results until 2001, (2) require and ensure remediation of the contaminated groundwater, and (3) conduct follow-up testing. Plaintiffs also alleged negligence by Dow in causing and allowing the contamination. Plaintiffs sought injunctive relief,[3] punitive damages under *31 Louisiana Civil Code Article 2315.3,[4] and remediation under Louisiana Revised Statutes 30:2015.1, enacted in 2003 to be Louisiana's groundwater remediation statute.[5] Additionally, Plaintiffs alleged strict liability under Louisiana Civil Code Article 2317.[6] Most germane to the matter at bar, Plaintiffs sought class certification pursuant to Louisiana Code of Civil Procedure Article 591.
In January 2005 a two-day hearing was held on class certification. Evidence included testimony by the three proposed class representatives. On January 31, 2005 the trial court initially denied certification of the class. Plaintiffs petitioned and were granted a new trial, limited to re-argument. In granting the new trial, the court stated that it had initially ruled too hastily and failed to give due consideration to Plaintiffs' evidence. In a written ruling released on September 21, 2005 the trial court reversed itself and certified the class for remediation claims pursuant to Louisiana Revised Statutes 30:2015:1 and punitive damages except as against the State Defendants. In a judgment signed on October 18, 2005 the trial court defined the class as all landowners since 1990 in a geographically defined area including the contamination. These rulings also specify that the trial court certified the class solely under Louisiana Code of Civil Procedure Article 591(B)(3).
*32 All Defendants have appealed this ruling, alleging error in the certification. The Plaintiffs have appealed the trial court's determination that the class be certified solely under Louisiana Code of Civil Procedure Article 591(B)(3); they seek certification under Article 591(B)(1) and (2) as well.

II. LAW AND DISCUSSION
Louisiana Code of Civil Procedure Article 591(A) sets out the mandatory requirements for class certification:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
Once a proposed class has demonstrated conformity with all requirements of Article 591(A), a court considering class certification must ensure that the proposed class fits into one of the four categories of class action enumerated in Article 591(B) as follows:
B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;

*33 (e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
A trial court's decision to certify a class merits great discretion and should be affirmed on appeal absent manifest error. White v. General Motors Corp., 97-1028, p. 13 (La.App. 1 Cir. 6/29/98), 718 So.2d 480, 488. A trial court considering class certification should generally favor maintaining the class in light of the relative ease of subsequent modification as future developments or circumstances may warrant. Boyd v. Allied Signal, Inc., XXXX-XXXX, p. 9 (La.App. 1 Cir. 12/30/04), 898 So.2d 450, 456 (citing McCastle v. Rollins Envtl. Serv. Of La., Inc., 456 So.2d 612, 620 (La.1984)).[7]

A. Mandatory Requirements for Class Certification
Louisiana Code of Civil Procedure Article 591(A), as quoted above, sets out five mandatory requirements for class certification: numerosity, commonality of factual or legal questions, typicality of the lead plaintiff or plaintiffs' claims, adequacy of the lead plaintiff or plaintiffs as class representatives, and objectivity of the class definition. While class certification by the trial court is preferred for the reasons noted above, the party seeking class status has the burden of establishing these required qualifications. Carr v. GAF, Inc., 97-0838R, p. 6 (La.App. 1 Cir. 4/8/98), 711 So.2d 802, 805-06.

1. Numerosity
The numerosity qualification requires that "the class is so numerous that joinder is impractical, but at the same time, it is a definable group of aggrieved persons." Cotton v. Gaylord Container, 96-1958, p. 14 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, 768. A specific number is not required, but the class must entail more than mere allegations of a "large number of potential claimants." Lewis v. Texaco Exploration & Prod. Co., Inc., 96-1458, p. 15 (La.App. 1 Cir. 7/30/97), 698 So.2d 1001, 1012.
The trial court here found sufficiently numerous the "over two thousand landowners" in the area affected by the alleged groundwater contamination. Dow and the other Defendants argue that, far from being a numerous class, there are no plaintiffs at all. They reason that Plaintiffs have not shown evidence that any of the proposed class members are actually "aggrieved." Defendants assert that the *34 proposed class members, while being landowners, have no ownership interest in the groundwater beneath their property, as it is an uncaptured or "fugitive" mineral not susceptible of ownership until and unless it is reduced to possession. Defendants also argue that as Plaintiffs seek remediation costs but not individual stigma or lost value damages, they have not alleged sufficient compensable damage to have standing.
Although thought-provoking, this argument goes less toward the propriety of class certification as an essentially procedural matter and more towards the substance and merit of Plaintiffs' claims. The only issue to be considered by the trial court in ruling on certification, and by this court on review, is whether the case at bar is one in which the procedural device of a class action is appropriate. In determining the propriety of a class action, the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood that they ultimately will prevail on the merits. Andry v. Murphy Oil, U.S.A., Inc., 97-0793, p. 3 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1129 (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) and Miller v. Mackey Int'l, Inc., 452 F.2d 424 (5th Cir.1971)). Defendants' arguments might more properly be raised through an exception, a motion for summary judgment, or trial on the merits rather than through this inquiry, which is limited to the numerosity requirement for procedural certification of a class.[8]
In determining whether the elements for class certification have been established, the court may consider the pleadings, affidavits, depositions, briefs, exhibits, and testimony presented at a certification hearing. Cotton, 96-1958 at p. 13, 691 So.2d at 768. Here, the trial court held a full hearing and also seems to have given serious reconsideration to the evidence upon the Plaintiffs' motion for new trial. It found a class of over two thousand potential class members sufficiently numerous. We see no error in this conclusion.

2. Commonality of Factual or Legal Questions
The "common character" analysis arises twice in the class certification inquiry. As a mandatory requirement under Article 591(A)(2), the court must find "questions of law or fact common to the class." Under the provisions of Article 591(B), which determine the type of class being certified, the court may certify under Article 591(B)(3) if it finds that the common questions from Article 591(A) predominate over any individualized claims and also that the class action format will be a superior method of adjudication. At this time, we consider the basic commonality requirement; the predominance/superiority inquiry will be discussed infra.
The State Defendants argue against a finding of commonality because Plaintiffs' claims against them and the basis of their potential liability differs from Plaintiffs' claims against Dow. Dow argues against commonality because it suggests factual differences as to how, whether, and to what extent the contamination occurred on land owned by potential class members. The trial court in the case at bar found that the potential class members shared common questions of law and fact in that "there is one (1) chemical at issue and two (2) common claims made by the Plaintiffs."
*35 Both the United States Supreme Court and the Supreme Court of Louisiana have allowed that claims based on a "common cause or disaster" are likely subjects for class certification. Ford v. Murphy Oil U.S.A., Inc., 96-2913, pp. 12-14 (La.9/9/97), 703 So.2d 542, 549-50 (citing AmChem Prod., Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Although Defendants here argue likely issues for consideration on the merits, these do not defeat the common threads shared by all potential class Plaintiffs: groundwater under their properties has been contaminated by a single chemical; they seek remediation and, if appropriate, punitive damages. We find no error in the trial court's finding on this element.

3. Typicality of the Class Representatives
This requirement asks whether the class representatives' claims are typical of those of the greater proposed class. Typicality is satisfied if the claims of the class representatives arise out of the same event, practice, or course of conduct giving rise to the claims of the other class members, and are based on the same legal theory. The representatives' claims need not exhibit all of the various types of possible injuries or elements of damages claimed by the class as a whole. Boyd, XXXX-XXXX at p. 25, 898 So.2d at 464-65. The trial court in the case at bar found typicality based on the "same course of [Defendant] conduct, namely the pollution of the groundwater, and . . . the same legal theories of remuneration and punitive damages." The trial court further bolstered its finding by noting (as it did in its commonality analysis) the unity conferred by the fact of a common contaminant.
The State Defendants and Dow argue against the finding of typicality on grounds that, regardless of the singularity of the contaminant at issue, the alleged contamination entails multiple sources and causes as Plaintiffs have named two distinct entities, Dow and Industrial Haulers, as potential tortfeasors.[9] The Defendants point particularly to Ford v. Murphy Oil, where the supreme court ruled against class certification on the basis of multiple sources of contamination. Ford, 96-2913 at p. 11, 703 So.2d at 548.
Defendants' reliance on Ford is misplaced. That opinion did not address typicality, but rather focused on the commonality inquiry as it appears in Article 591(B)(3). Id. at p. 10, 703 So.2d at 548. As seen above, Defendants have also sought to import too much of a discussion of this case's merits and substance into the procedural inquiry of class certification. The statute provision as quoted above emphasizes the nature of class members' claims, not potential questions as to causation. We agree with the trial court's determination that the potential class representatives in this matter have lodged claims typical of those likely to be raised by the rest of the prospective class.

4. Adequacy of the Lead Plaintiffs to Represent the Class
This element asks whether "[t]he representative parties will fairly and adequately protect the interests of the class." LSA-C.C.P. art 591(A)(4). The following factors aid courts in determining this requirement: (1) the claims of the chosen class representatives cannot be antagonistic or conflict with those of other class members; (2) the chosen representatives must have a sufficient interest in the out-come *36 to ensure vigorous advocacy; and (3) counsel for the chosen representatives must be competent, experienced, qualified, and generally able to conduct the litigation vigorously. Boyd, XXXX-XXXX at p. 26, 898 So.2d at 465.
The trial court here found no conflict, no difference of interest, and competent counsel, thus it decided the class's representation was adequate. Dow seems to argue in response that class representatives should be held to a heightened standard of knowledge and participation and that the Plaintiffs here serve as little more than "litigation figureheads" who lack even a viable injury to create a sufficient and justifiable interest in the litigation outcome. Dow refers in this context to supreme court statements in a case on a non-class action matter concerning the necessary showing of "reasons personal to the owner" to justify a damages award that exceeds restoration costs. Hornsby v. Bayou Jack Logging, XXXX-XXXX, p. 11 (La.5/6/05), 902 So.2d 361, 368.
As above, Defendants here seek to import excessive merits and substance inquiries into the class certification analysis. If the Plaintiffs, or indeed any proposed class members, lack a cause of action, this is not the occasion for such discussion. Furthermore, the reference to Hornsby is inapposite. Hornsby does not address class certification; it addresses a plaintiff's burden of proof for recovering non-pecuniary damages over and above restoration costs. This is particularized subject matter far afield from the bases for Plaintiffs' class certification claims.
Finally, our jurisprudence does not demand of a class representative the sort of engagement that Defendants seek to require. This court recently certified a class with a representative who, despite having a relatively small financial stake in the disputed matter, "testified that he had a claim for loss of mineral royalties and he wished to pursue that claim through the class action litigation. He further testified that he would follow all the court's orders and would cooperate in the process by giving a deposition or appearing in court as required." Singleton v. Northfield Ins. Co., XXXX-XXXX, pp. 15-16 (La.App. 1 Cir. 5/15/02), 826 So.2d 55, 65.
Here, the Plaintiff representatives have already shown their willingness to appear personally on behalf of the class. At the certification hearing, all three testified to the trial court's satisfaction that they would be acceptable class representatives. At this point, we decline to extend the requirements for adequacy beyond the three factors described above and current relevant jurisprudence. We thus find no error in the trial court's finding of adequacy.

5. Objectivity of Class Definition
The final threshold requirement for class certification is that "[t]he class is or may be defined objectively in terms of ascertainable criteria. . . ." According to the trial court, Defendants did not contest this issue, thus the court adopted the Plaintiffs' reasons, which emphasized the class as a geographical entity, and defined the class accordingly.[10] Dow argues that the trial court's definition of the class to include all landowners in the affected area *37 since January 1, 1990 amounted to an abuse of discretion since no contamination has been shown prior to 1997. This argument is likely based on statements in the federal Department of Health and Human Services report to the effect that testing in 1994, which seems to be the first time this water was under scrutiny, did not detect vinyl chloride.
Plaintiffs refer to the conclusions of Dr. Jeffrey S. Hanor, professor of Geology and Geophysics at LSU. The record contains Dr. Hanor's report, which details a confirmed spill of chlorinated compounds at Dow in 1993 as well as indications of an earlier release of chlorinated hydrocarbons and the company's ongoing use of a hazardous waste dump for chlorinated compounds that resulted in similar contamination. Dr. Hanor's report also suggests that data from testing performed between 1992 and 1994 indicated chloride contamination that had likely been migrating for some time. [Hanor Report 20] We note finally that the record also contains, as an exhibit to Dr. Hanor's deposition, a "status report" by Defendant Ivy Dupree of Dow's Environmental Services Department. This report, dated February 4, 1991, suggests in its summary that remediation be undertaken in order to "prevent the migration of contaminants downward to the Plaquemine aquifer."
Our review of the record leads us to conclude that the trial court's designation of the class's temporal origins as of January 1, 1990 was not unreasonable. As noted at the outset of this analysis, should facts be developed in the course of litigation that require modification of this designation, the trial court will be within the scope of its discretion to do so.

B. Type of Class Action
Once a proposed class has demonstrated conformity with all requirements of Article 591(A), a court considering class certification must ensure that the proposed class fits into one of the four categories of class action enumerated in Article 591(B) as quoted earlier. Generally speaking, Article 591(B)(3) classes, in which a notified potential class member may "opt out" and pursue individual litigation, are the most commonly certified. The other three types of class action are less common, exceptional due to their specificity, and, in the case of Article 591(B)(1) and (2) class actions, entail a bar against opting out. Here, Plaintiffs were certified as a class under Article 591(B)(3) alone. They request on cross-appeal that the trial court's decision not to certify under Article 591(B)(1) and (2) be reversed. Defendants contest the certification under Article 591(B)(3).

1. Certification Under Article 591(B)(3)
Article 591(B)(3) class actions are the most often utilized. This type of class action builds on the "commonality" requirement established in Article 591(A) and asks further that the class commonalities "predominate over any questions affecting only individual members" and that the class action format be "superior to other available methods for the fair and efficient adjudication of the controversy," such as joinder or individual actions. The statute, as quoted above, provides six illustrative factors for courts to consider when determining an Article 591(B)(3) certification:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;

*38 (d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification; [and]
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation.
In the case at bar, the trial court certified the class under Article 591(B)(3) with the following explanation:
The questions of law and fact are common to all of the members of the class, namely there is one (1) chemical at issue and two (2) common claims made by the Plaintiffs. More importantly, these common issues predominate over any individuals claim by any one member of the class. All members of the proposed class have the same claims. For these reasons, this Court finds that under these facts, a class certification is superior to the other available methods of adjudication, and it would be in the best interests of efficiency and justice to continue this matter as a class action.
Dow argues that the trial court failed to consider factual differences and distinctions that could potentially affect class commonality. The State Defendants argue largely that distinctions between themselves and the private Defendants mitigate against class certification. Article 591(B)(3), however, asks only whether a proposed class's commonalities predominate over its internal differences as a procedural matter. Internal differences within the proposed class that may arise on the merits and distinctions amongst defendants are not at issue. As the trial court pointed out, all proposed class members share identical claims regarding contamination by a single substance. That recoveries may ultimately vary from plaintiff to plaintiff does not defeat their cause as a whole. McCastle, 456 So.2d at 620. We thus uphold the trial court's finding that the proposed class's commonalities predominated over its potential internal or individual differences.
The private and State Defendants here both argue against the trial court's ruling on the superiority of the class action format to other methods of adjudication. Dow argues against the trial court's certification of a class on what Dow argues is a "novel, untested combination of legal issues presented." This assertion relies upon the supreme court's ruling that a "novel and untested" legal theory should not be made the basis of a class certification until courts have garnered enough experience and information to render judgment "in a way that preserves judicial resources." Ford, 96-2913 at pp. 14-16, 703 So.2d at 550-51. Dow argues that Plaintiffs' claims for remediation and punitive damages amount to an untested basis for class certifications for a number of reasons, including the relative newness of Louisiana Revised Statutes 30:2015.1,[11] the lack of significant interpretive jurisprudence, and a lack of precedence for either class certification under the statute or for "bootstrapping" punitive damages claims from the underlying remediation claims.
The Ford theory was indeed novel: residents of St. Bernard Parish alleged that emissions from four defendant petrochemical plants caused personal and property damage "by virtue of a synergistic accumulation *39 or combination of releases. . . ." Ford, 96-2913 at p. 14, 703 So.2d at 550. Writing for the court, Justice Victory found that the utter novelty of the plaintiffs' "synergy" theory mitigated against a finding under Article 591(B)(3) and admonished that "the court must have experience with a tort in the form of several individual actions" before class certification may be appropriate. Id. at pp. 15-16, 703 So.2d at 551.
In the case at bar, it is true that Louisiana Revised Statutes 30:2015.1 dates only from 2003 and that only a handful of cases have treated the statute since its inception.[12] We note, however, that the legislature expressly specified this statute to be procedural, not substantive; it is understood "to provide a set of procedures to be followed in litigation wherein the plaintiffs seek `to recover damages for the evaluation and remediation of any contamination or pollution that is alleged to impact or threaten usable ground water.'" Simoneaux v. Amoco Prod. Co., XXXX-XXXX, p. 2 (La.App. 1 Cir. 9/26/03), 860 So.2d 560, 575 (Fitzsimmons, J. concurring). This is a far cry from the Ford scenario where the plaintiffs sought to launch a truly novel and untested theory of causation requiring scientific testimony and expertise that would likely far outstrip a court's ability to evaluate for purposes of class certification. We also note that Louisiana Revised Statutes 30:2015.1 has already been used as the basis of a class certification in Turner v. Murphy Oil, U.S.A., Inc., 234 F.R.D. 597 (E.D.La.1/30/06).[13] We conclude that Dow's argument on this point is misplaced.
The State Defendants argue against the superiority of the class format on the basis that the State departments, not the Plaintiffs, should be the party or parties seeking remediation. This argument is also misplaced. Louisiana Revised Statutes 30:2015.1[14] was designed to encourage private litigation against contaminators while ensuring State administrative oversight of the remediation efforts borne of the private litigation. Loyd J. Bourgeois, Comment, Private Actions Seeking Remediation or Restoration Damages: Who Ensures the Cleanup Actually Occurs?, 17 Tul. Envtl. L.J. 355, 369 (2004); see also Simoneaux, XXXX-XXXX at p. 2, 860 So.2d at 576. That the State in this litigation is at once a defendant and a potential "plaintiff" in terms of its role in enforcing and ensuring cleanup does not affect the Plaintiffs' ability to be certified as a class.
One further aspect in determining superiority is the consideration of policy concerns through the factors listed in the statute, particularly judicial efficiency and individual fairness. The supreme court has instructed trial courts to consider the enumerated factors as well as any additional potential relevant factors in its deliberations. McCastle, 456 So.2d at 617-18. Here, the trial court's recitation references the factors in its finding that "it would be *40 in the best interests of efficiency and justice to continue this matter as a class action" and its determination that the uniformity of the proposed class members' claims and the singularity of the chemical contaminant rendered class action the best method of adjudication. We find no error in this conclusion and affirm the trial court's certification of the Plaintiffs as a class pursuant to Article 591(B)(3).

2. Certification Under Article 591(B)(1) and (2)
Plaintiffs have asked this court to approve certification under Article 591(B)(1) and (2) as well as (3). The trial court declined to do so, writing that: "This Court finds that the Plaintiffs have adequately satisfied [Article] 591(B)(3); therefore this Court need not consider the other enumerated sections of [Article] 591(B)." As noted above, certifications under (1) and (2) are exceptional and there is scant jurisprudence.

a. Certification Under Article 591(B)(1)
Article 591(B)(1) class actions, commonly referred to as "prejudice actions," are certified on a "non-opt out" basis to address litigations "where the defendant or absent class members would be prejudiced without a single, unitary decision" and varying judgments will force inconsistent conduct from a defendant found liable. Kent A. Lambert, Certification of Class Actions in Louisiana, 58 La. L.Rev. 1085, 1098-1100 (1998); See Schexnayder v. Entergy Louisiana, Inc., 04-0636, p. 12 (La.App. 5 Cir. 3/29/05), 899 So.2d 107, 116.
This type of class action does not apply readily in the case at bar. Conventional knowledge suggests that these types of class actions depend on a "real risk that separate actions may occur," which at this time is not the case here. Lambert, Certification of Class Actions, 58 La. L.Rev. at 1098. Further, it is also generally understood that these actions are not appropriate when the remedy at issue is one of money damages alone instead of, for example, injunctive relief. A defendant is not viewed as subject to "inconsistent conduct" if the difference is payment to one party and not to another. Id. at 1099. As the case at bar is one for damages alone, this type of certification is not appropriate.
Article 591(B)(1) class actions may also be certified to protect potential class members' access to a limited fund for recovery. In order to obtain such certification, movants have the burden to show that there is a finite and actually limited fund. Id. Plaintiffs suggest here that constitutional limits on punitive damages be viewed as the sort of limited fund that this provision covers. In our view, this does not amount to a sufficient showing of a quantifiably limited fund. Thus, certification under Article 591(B)(1) is not appropriate under the facts as currently presented. We note, however, that as the trial court has significant discretion to modify a class certification judgment, Plaintiffs may raise this claim in the future should the facts develop accordingly.

b. Certification Under Article 591(B)(2)
Article 591(B)(2) class actions, commonly thought of as "civil rights actions," are certified on a "non-opt out" basis in order to ensure the completeness of appropriate declaratory or injunctive relief concerning conduct by the defendant that may be either ordered or blocked. Lambert, Certification of Class Actions, 58 La. L.Rev. at 1100-01. See Defraites v. State Farm Mut. Auto Ins. Co., 03-1081, p. 16 (La.App. 5 Cir. 1/27/04), 864 So.2d 254, 262.
Plaintiffs here seek to be certified under Article 591(B)(2) on the grounds that Defendants have not acted to clean up the *41 contamination; they seek a court-supervised remediation plan be adopted and undertaken, which they state is "declaratory in nature." [Plaintiff Brief 27]. This is clearly Plaintiffs' stated ultimate goal, and a valid one. Practically speaking, however, this litigation seeks the monetary means to effect remediation pursuant to the groundwater statute. As such, it is not the sort of "purely" declaratory or injunctive relief claim best addressed by this provision and class certification is not appropriate under Article 591(B)(2).

C. Separation of Powers
Dow's final assignment of error states: "in the absence of actual damage, certification of a class-wide remediation remedy violates Louisiana's separation of powers." Dow argues that class certification in this matter will disturb the legislature's intended scheme of expressly delegating groundwater remediation matters to the environmental agencies under the executive branch. Because, Dow argues, the proposed class seeks only remediation and punitive damages and not compensatory damages for actual loss or harm sustained, no claim exists within "the original jurisdiction of the court" and the judicial branch should refrain from engagement in what should be a matter limited to the oversight of the legislative and executive branches of state government. Dow argues emphatically that "[t]he plaintiffs in this case simply do not have an actionable claim for damages. For that reason, the judicial branch cannot exercise original jurisdiction. . . ."
Dow's argument, as others above, goes more applicably to a properly lodged exception. We note, however, that Plaintiffs have indeed lodged a valid actionable claim. They allege negligence on the part of Dow; this negligence allegedly caused, and perhaps allowed to worsen, groundwater contamination in sufficient amounts to constitute a per se violation of federal drinking water regulations.[15] Plaintiffs also allege that negligence on the part of the State Defendants worsened the contamination through inaction and exposed Plaintiffs to risk of harm through the agencies' failure for several years to warn and notify property owners of the contamination. Plaintiffs' cause of action arises under tort principles and not Louisiana Revised Statutes 30:2015.1, which Plaintiffs use here in a procedural capacity to comply with proper procedures for seeking remediation. The statute's language allows them to do so without a specific claim for individually compensable damages:
Notwithstanding any law to the contrary, upon the filing of any litigation, action, or pleading by any plaintiff in the principal demand, or his otherwise making a judicial demand which includes a claim to recover damages for the evaluation and remediation of any contamination or pollution that is alleged to impact or threaten usable ground water . . . (emphasis added).
LSA-R.S. 30:2015.1(A)
We thus conclude that this assignment of error does not overcome the trial court's decision to certify the Plaintiffs as a class in this matter.

CONCLUSION
We conclude that this case is proper for class certification. Plaintiffs have demonstrated that the proposed class satisfies the enumerated requirements of Louisiana Code of Civil Procedure Article 591(A) and the class belongs properly within the category represented by Article 591(B)(3). The action of the district court in certifying *42 the Plaintiffs as a class is hereby affirmed. Costs in the amount of $7,994.00 will be assessed in equal parts to the State of Louisiana through the Department of Health and Hospitals and through the Department of Environmental Quality, Dow Chemical Company, and Industrial Haulers, Inc.
AFFIRMED.
DOWNING, J., concurs.
NOTES
[1] Defendant Industrial Haulers, Inc. has submitted briefs in this matter, the essence of which adopt the assignments of error advanced by Dow Chemical Company and the State Defendants.
[2] U.S. Dep't of Health & Human Serv., Public Comment Release; Review of Groundwater Sampling Results from the Myrtle Grove Trailer Park Well System, June 18, 2002.
[3] Plaintiffs abandoned the claims for injunctive relief in their Fourth Amending Petition of April 15, 2002.
[4] This provision, in effect at the time in question but repealed by the legislature in 1996, provided that punitive damages could be awarded "if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances."
[5] The statute is comprehensive, but reads in pertinent part as follows:

A. The legislature hereby finds and declares that Article IX, Section 1 of the Constitution of Louisiana mandates that the natural resources of the state, including water, are to be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people and further mandates that the legislature enact laws to implement this policy.
B. Notwithstanding any law to the contrary, upon the filing of any litigation, action, or pleading by any plaintiff in the principal demand, or his otherwise making a judicial demand which includes a claim to recover damages for the evaluation and remediation of any contamination or pollution that is alleged to impact or threaten usable ground water, such plaintiff filing same shall provide written notice by certified mail, return receipt requested, which notice shall contain a certified copy of the petition in such litigation, to the state of Louisiana through the Department of Environmental Quality. To the extent that any such litigation or action seeks to recover for the evaluation and remediation of any contamination or pollution that is alleged to impact or threaten usable ground water, the Department of Environmental Quality, in accordance with its respective areas of constitutional and statutory authority and regulations adopted pursuant thereto, shall have the right to intervene in such litigation or action in accordance with the Louisiana Code of Civil Procedure. The department shall not have the right to independently assert a plea for damages to usable ground water beyond that stated by the plaintiff in the principal demand. However, nothing in this Section shall diminish the authority of the department from independently bringing any civil or administrative enforcement action. No judgment or order shall be rendered granting any relief in such litigation, nor shall the litigation be dismissed, without proof of notification to the state of Louisiana as set forth in this Subsection.
[6] "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." Plaintiffs allege in their petition that Defendants "permitted or participated in the release of hazardous and toxic substances in their garde in a manner violative of their obligations under the law."
[7] In 1997, the Louisiana legislature enacted Act 839, which substantially amended the law pertaining to Louisiana class action procedure. This legislation completely rewrote the class action provisions to track the language of Federal Rule of Procedure 23 almost verbatim. However, according to the editor's notes following Article 591 of the Louisiana Code of Civil Procedure, these modifications "appear to incorporate much of the jurisprudence, as set forth in McCastle v. Rollins. . . ." Singleton v. Northfield Ins. Co., XXXX-XXXX, p. 8 (La.App. 1 Cir. 5/15/02), 826 So.2d 55, 61.
[8] We note that Defendants raised exceptions early in this litigation; at this time, these exceptions have not yet been heard or resolved.
[9] Dow also argues the potential for vinyl chloride contamination from non-named local sources, such as gas stations.
[10] "All persons and entities who presently own, or owned at any time after January 1, 1990, land in the following area: Section 9 through 15, 46 through 57, and 83 through 87, all in Township 9 South, Range 12 East, Iberville Parish, Louisiana. Excluded from this definition are: (1) the defendants (and their officers, directors, and employees), and any entity in which the defendants have a controlling interest; and (2) any governmental entity, subdivision, agency or department."
[11] As noted above, the legislature enacted Louisiana Revised Statutes 30:2015.1 in 2003. See supra note 3 for text.
[12] Turner v. Murphy Oil, U.S.A., Inc., 234 F.R.D. 597 (E.D.La.1/30/06); Thibeaux v. Chevron Corp., No. 05-1545, slip op. at 2 (W.D.La., 12/8/05), available at 2005 WL 3359177; Brownell Land Corp., L.L.C. v. Apache Corp., No. 05-322, slip op. at 5 (E.D.La.10/13/05), available at 2005 WL 3543772; Minvielle v. IMC Global Operations, Inc., 380 F.Supp.2d 755, 761 (W.D.La.10/19/04); Simoneaux v. Amoco Prod. Co., 2002-CA-1050 (La.App. 1 Cir. 9/26/03), 860 So.2d 560, 575.
[13] It is our understanding that Defendant Murphy Oil has appealed the class certification ruling to the Fifth Circuit Court of Appeals. Turner v. Murphy Oil, U.S.A., Inc., No. 05-4206, slip op. at 4 (E.D.La.2/6/06), available at 2006 WL 286009.
[14] See supra note 3 for text.
[15] See supra note 1 and accompanying text.