992 So.2d 510 (2008)
DISPLAY SOUTH, INC., Individually, and as Representative of the Class
v.
GRAPHICS HOUSE SPORTS PROMOTIONS, INC., d/b/a GH Imaging and GHImaging.com.
No. 2007 CA 0925.
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
*514 John P. Wolff, III, Nancy B. Gilbert, Christopher K. Jones, Keogh, Cox & Wilson, Ltd., and Philip Bohrer, Bohrer Law Firm, L.L.C., and Keith D. Jones, Baton Rouge, LA, for Plaintiff-Appellee, Display South, Inc.
Brent E. Kinchen, Eric M. Barrilleaux, Seale, Smith, Zuber & Barnette, Baton Rouge, LA, for Defendant-Appellant, Farm Bureau Mutual Ins. Co. of Michigan.
Kirk A. Patrick, III, Heather A. Cross, Donohue Patrick, PLLC, Baton Rouge, LA, for Defendant-Appellant, Graphics House Sports Promotions, Inc., d/b/a GH Imaging and GHImaging.com.
Before PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
Graphics House Sports Promotions, Inc., d/b/a/ GH Imaging and GH Imaging.com (GH) and its insurer, Farm Bureau Mutual Insurance Company of Michigan (Farm Bureau), appeal a judgment certifying the class in this class action suit filed by Display South, Inc. (Display South), alleging violations of the Telephone Consumer Protection Act. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Display South filed a petition on its own behalf and for certification as the representative of a class consisting of all persons who received unsolicited telephone facsimile (fax) transmissions or advertisements from GH from March 12, 1999, to the present, in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C.A. § 227, et seq. The original defendant was GH; Farm Bureau was added in a supplemental and amending petition.[1] The certification issue was tried and the class was certified in a January 3, 2007 judgment.[2] The class consists of:
All recipients within the State of Louisiana of unsolicited telefacsimile messages and/or advertisements which were transmitted and/or initiated by or on behalf of Graphics House Sports Promotions, Inc. d/b/a GH Imaging and GHImaging.com between the dates of March 12, 1999, and through the present, in violation of 47 U.S.C.[A.] § 227.
GH and Farm Bureau have appealed the certification of the class.[3]

*515 APPLICABLE LAW
The TCPA makes it a violation of federal law to use any telephone facsimile machine, computer, or other device to send an "unsolicited advertisement" to a telephone facsimile machine. See 47 U.S.C.A. § 227(b)(1)(C). An "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C.A. § 227(a)(5). Private citizens whose rights under the TCPA have been violated may sue to enjoin future transmissions, recover the greater of actual monetary damages or $500 in damages for each such fax, or obtain injunctive relief plus damages. See 47 U.S.C.A. § 227(b)(3). For willful or knowing violations of the TCPA, the court has discretion to increase the amount of the award to not more than three times the amount of damages specified above. See 47 U.S.C.A. § 227(b)(3).
The class action is a nontraditional litigation procedure permitting a representative with typical claims to sue, on behalf of a class of similarly situated persons, when the question is of common or general interest to persons so numerous as to make it impractical to bring them all before the court. The purpose of the procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are similarly situated, provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion from the class. Ford v. Murphy Oil U.S.A., Inc., 96-2913 (La.9/9/97), 703 So.2d 542, 544; Singleton v. Northfield Ins. Co., 01-0447 (La.App. 1st Cir.5/15/02), 826 So.2d 55, 61, writ denied, 02-1660 (La.9/30/02), 825 So.2d 1200.
Class actions in Louisiana are governed by LSA-C.C.P. arts. 591-597. Article 591 states the following prerequisites for maintaining a class action:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby *516 making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.
C. Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class. However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class.
The only issue to be considered by the trial court in ruling on certification, and by this court on review, is whether the case at bar is one in which the procedural device of a class action is appropriate. In determining the propriety of a class action, the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood that they ultimately will prevail on the merits. Robichaux v. State ex rel. Dept. of Health and Hospitals, 06-0437 (La.App. 1st Cir.12/28/06), 952 So.2d 27, 34, writs denied, 07-0567, 07-0580, 07-583 (La.6/22/07), 959 So.2d 503 and 504. A trial court's decision to certify a class is a two-step process. Therefore, appellate review of such decisions also follows a two-step analysis. The trial court must first determine whether a factual basis exists for certifying the matter as a class action. These factual findings are reviewed on appeal pursuant to the manifest error standard of review. If the trial court finds that a factual basis exists for certifying the action, it then exercises its discretion in deciding whether to certify the class. This aspect of the judgment is reviewed pursuant to the abuse of discretion standard. Singleton, 826 So.2d at 60-61. Unless a trial court committed manifest error in its factual findings or abused its discretion in deciding that class certification is appropriate, we must affirm the trial court's determination. See Boudreaux v. State, Dept. of Transp. and Dev., 96-0137 (La. App. 1st Cir.2/14/97), 690 So.2d 114, 119.

DISCUSSION
In the judgment certifying the class, the court stated its factual findings on which the decision was based, as follows:
a. Numerosity. The Class, consisting of approximately 461 persons or legal *517 entities located within the State of Louisiana, satisfies the numerosity requirement of La. C.C.P. art. 591(A)(1).
b. Commonality. Common questions of law and fact with regard to [GH's] alleged violation of 47 U.S.C.A. § 227, et seq. ("TCPA") and the statutory damages sustained thereby exist for each of the Class Members in this case, and the requirements of La. C.C.P. art. 591(A)(2) are met.
c. Typicality. The class representative's claims are typical of every Class Member's claim, and the requirements of La. C.C.P. art. 591(A)(3) are met.
d. Adequate Representation. Plaintiffs interests do not conflict and are co-extensive with the absent Class Members. In addition, this Court recognizes the experience of Class Counsel and finds that the requirement of adequate representation of the Class has been fully met, in accordance with La. C.C.P. art. 591(A)(4).
e. Objectively Definable Class. This class may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case and the requirements of La. C.C.P. art. 591(A)(5) are met.
f. Inconsistent Adjudications. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications to the individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications. La. C.C.P. art. 591(B)(1).
g. Predominance of Common Issues. Several issues of fact and law are common to each of the proposed class members, and no individual issues predominate over any of them, thus satisfying the requirements of La. C.C.P. art. 591(B)(3).
h. Superiority of the Class Action Mechanism. The class action mechanism is ideally suited for treatment of the certification of this matter. Class certification promotes efficiency and uniformity of judgment because the many Class Members will not be forced to separately pursue claims in various courts around the State of Louisiana. The requirements of La. C.C.P. art. 591(B)(3) are satisfied.
Having found that all the requirements of Article 591 were met, the court certified the class and designated Display South as the class representative.
The first step in this court's review is to examine the evidentiary underpinnings of the court's factual findings to determine if they were manifestly erroneous. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court; and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, *518 through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
The five prerequisites for class action certification in LSA-C.C.P. art. 591(A) are generally called numerosity, commonality, typicality, adequate representation, and objectively definable class. We have reviewed the record with each of these factors in mind.

Numerosity
Generally, a class action is appropriate whenever the interested parties appear to be so numerous that separate suits would unduly burden the courts, and a class action would "clearly be more useful and judicially expedient than the other available procedures." Cotton v. Gaylord Container, 96-1958 (La.App. 1st Or.3/27/97), 691 So.2d 760, 769, writ denied, 97-0800 (La.4/8/97), 693 So.2d 147. Such is clearly the case here. In its answers to interrogatories, GH stated that it bought fax numbers from a database company, Info USA. Daniel J. McKinnon, the corporate representative for GH, testified that GH contracted with two other companies, InfoLink Communications and Vision Lab, for the fax transmission of its advertisements based on the Info USA list. A print-out from Vision Lab included 461 fax numbers, including that of Display South, to which GH advertisements were sent on three dates. Although the appellants contend this information is outdated and unreliable due to changes in the assignments of fax numbers, a representative of Info USA, Kerri Barry, testified in a deposition that Info USA could easily update the information to determine the identity of the users of those 461 fax numbers at the time a particular fax was sent. Joinder of that number of claimants, while not impossible, would certainly be unwieldy, and separate suits in myriad courts all over the state could burden the court system. Based on this information, we conclude there was a reasonable factual basis for the district court's finding that the numerosity requirement was met, and the record does not show that this finding was clearly wrong.

Commonality
The test of commonality is not a demanding one, and requires only that there be at least one issue, the resolution of which will affect all or a significant number of the putative class members. Duhe v. Texaco, Inc., 99-2002 (La.App. 3rd Cir.2/7/01), 779 So.2d 1070, 1078, writ denied, 01-0637 (La.4/27/01), 791 So.2d 637. All the claimants in the class have potential claims against GH based on the TCPA, and the damages available to them are specified by the applicable statute. These damages are limited to actual monetary loss or $500 per fax transmission, whichever is greater, unless the court finds punitive damages up to $1500 per fax transmission are justified due to a defendant's willful violation of the TCPA. The defenses to the claims are also statutorily described. Even though some persons may ultimately be eliminated from the class on the basis that they gave express permission to GH to send the fax or faxes to them, the class members are still linked by a common complaint, and the defenses available to GH are also common to the entire class. Therefore, a reasonable factual basis exists and the court did not manifestly err in finding the requirement of commonality was met.

Typicality
Generally, the claims of the representative party should be a cross-section of, or typical of, the claims of all class members. Lewis v. Texaco Exploration and Prod. Co., Inc., 96-1458 (La.App. 1st Cir.7/30/97), 698 So.2d 1001, 1012. The typicality element is satisfied if the claims *519 of the representative party arise out of the same event, practice, or course of conduct that gives rise to the claims of the other class members and those claims are based on the same legal theory. Singleton, 826 So.2d at 63.
Display South established through the testimony of its sole owner and president, Jean Whitaker Denman, that it received two faxes from GH during 2003. Those faxes were introduced into evidence; one showed a date of "26/03," the time of day sent, and the name of the recipient, Display South; the other showed a date of "7/03" and the time of day sent, but did not show the name of the recipient. Mr. Denman testified that when faxes came to Display South, they were routed to the employee whose name was on the fax. Unsolicited faxes were put in a separate folder and were eventually turned over to Display South's attorneys. He testified that these two GH faxes fell into the category of unsolicited faxes. Although Mr. Denman did not personally recall receiving them, he stated that he reviewed all the unsolicited faxes before turning them over to the attorneys. The dates on the two faxes correspond to the Vision Lab printout, which shows Display South's fax number on the list to whom GH faxes were sent on January 7, 2003, April 26, 2003, and September 15, 2003. Based on this evidence, there is factual support for Display South's claim that it received unsolicited faxes from GH, which is the essence of the claims of the class. The record as a whole supports the court's conclusion that Display South's claims were typical of the other class members. Therefore, there was no manifest error in the court's finding of typicality.

Adequate Representation
The parties seeking to maintain a class action must demonstrate that the representative parties will fairly and adequately protect the interests of the class. LSA-C.C.P. art. 591(A)(4). The test for determining adequate representation consists of three elements: (1) the chosen class representatives cannot have antagonistic or conflicting claims with other members of the class; (2) the named representatives must have a sufficient interest in the outcome to ensure vigorous advocacy; and (3) counsel for the named representatives must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. Singleton, 826 So.2d at 64.
GH and Farm Bureau contend that, because Display South is a defunct corporation with no assets, it cannot adequately represent the class in this litigation. However, the record shows that Display South has vigorously pursued this litigation, has appeared in court, has cooperated in discovery, and has participated in depositions in furtherance of the allegations of its petition. Display South has been certified as the class representative in another case, and this court affirmed that decision. See Display South, Inc. v. Express Computer Supply, Inc., 06-1137 (La.App. 1st Cir.5/4/07), 961 So.2d 451. Display South's claim presents no conflict with the claims of the other class members, and Mr. Denman stated that he would continue to pursue the litigation on behalf of Display South and the other class members, even if he did not benefit monetarily from it, because he wants "to stop junk faxes." The curriculum vitae of the attorneys representing Display South and the class show they are experienced in handling class action litigation. Therefore, there is evidentiary support for the court's finding that Display South will adequately represent the interests of the class, and the record as a whole does not indicate that this finding was manifestly erroneous.

*520 Objectively Definable Class

The requirement that there be a class capable of definition ensures that the proposed class is not amorphous, vague, or indeterminate. A person should be able to determine readily if he or she is a member of the class. Singleton, 826 So.2d at 66. As previously discussed, the record includes a print-out from Vision Lab showing the fax numbers of 461 recipients of GH faxes, as well as testimony that the companies or persons to whom those numbers were assigned could be ascertained and verified. The record also contains the transcript of a fairness hearing for a class action in another TCPA case, in which there were 531 class members, all of whom were identified and 511 of whom were successfully notified of the class action, representing a notice success rate of approximately 96%. We note that the ease in identifying the persons and entities who are members of the class in this case stands in stark contrast to the inability to identify a portion of a class that this court recently reversed. In Baumann v. D & J Fill, Inc., 07-1141 (La. App. 1st Cir.2/8/08), 2008 WL 426306 (unpublished), the district court had certified a class consisting of persons within certain geographic proximity to a landfill site who had suffered damages from the release of odors or fumes from that site; the class also included motorists on Interstate 10 within 2.0 miles of the facility as evidenced on the map. This court vacated the portion of the certification that included the I-10 motorists, because they could not be identified by objective criteria and thus, did not meet the requirements of Article 591(A)(5). In the matter before us, the evidence supports the factual finding that the class is objectively definable, and the record as a whole does not show manifest error in this determination.
In addition to the five factors in Article 591(A), in order to maintain a class action, one of the requirements of Article 591(B) must also be met. In this case, the district court found that the requirements of Article 591(B)(1) and (B)(3) were met. Therefore, we have focused our analysis on those provisions.

Inconsistent Adjudications
With the damages being so limited and defined in the statute, the possibility of inconsistent adjudications is not so likely in TCPA cases as in other types of claims that have been pursued as class actions. However, there is the possibility that one court might conclude that the actions of transmitters of faxes in violation of the TCPA were willful and knowing, justifying the imposition of punitive damages under the statute, while another court might find that precisely the same actions by the same defendant did not justify punitive damages. An early decision either imposing or denying such damages could, as a practical matter, be dispositive of the interests of other potential claimants who were not parties to that adjudication. Therefore, it is reasonable to pursue such claims in a class action, and we find no manifest error in the district court's conclusion that this requirement for class certification in Article 591(B)(1) was met in this case.

Predominance of Common Issues
This is a very straightforward type of claim, which presents common questions of fact and law that predominate over any questions affecting only individual members of the class. All claimants must have received unsolicited faxes. Therefore, in addition to showing that certain fax numbers were on the list to which GH faxes were transmitted, a common issue will be whether there was any attempt to obtain permission from the recipients *521 before the mass faxes were transmitted. There are no "general damages" or medical monitoring costs to be estimated for each claimant or for groups of claimants. Rather, the monetary damages are limited to the greater of the actual losses incurred by each recipient of such faxes or $500 per fax. In addition, the class members may obtain injunctive relief, thus precluding the future receipt of any unsolicited faxes from the defendant(s). The defendant's evidence of permission from the recipients of any or all of its fax transmissions will also be common to all claims. Virtually all of the legal issues are clearly set forth in the applicable statute. Therefore, we find no error in the court's finding that this requirement for certification in Article 591(B)(3) was met.

Superiority of the Class Action Mechanism
Obviously, from the court's standpoint, it would rather handle multiple claims for such small amounts in one lawsuit, rather than in individual suits that would clog its docket. Also, the class action mechanism provides that every claimant will have adequate representation before a court that is familiar with all the applicable statutes and jurisprudence. In addition, the defendant will be able to defend all such claims in one forum, rather than facing possible litigation in courts all over the state. Thus, this mechanism benefits both the parties and the court, and we find no manifest error in the court's conclusion that the class action mechanism is superior for the handling of these TCPA claims.

Article 591(C) Objection
The main argument against the court's certification of the class in this case is that the requirements of Article 591(C) cannot be met, because the resolution of each claim will be individual to each member of the class, in that the court will have to determine in each instance whether a recipient of a fax consented to the transmission. However, we believe, as did the district court, that this argument is based on a misunderstanding of Article 591(C). That article does not say that a class cannot be certified if, following certification of the class, individual claimants will have to prove their entitlement to compensation. Rather, it states that "[c]ertification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class." It is the certification process itself that is not to include an adjudication of individual claims. The following discussion between the court and the attorney representing GH illustrates the difference, as follows:
Ms. Cross: ... [N]o matter whose burden it is to show that the recipients of the faxes consented to the faxes, it is... still a claim or a defense on the liability aspects of this case that is entirely dependent on itsfor its resolution on members of the individual class, and according to 591(C), certification shall not be granted. I just don't know that there's any way around that.
The Court: Let me ask you a question about the theme of your argument. We have a toxic spill. There's a geographic region that's defined for a class. You have a residence within that geographical region, as do twenty-three thousand other people. Is [it] not a defense that, while you have a residence, they were actually on vacation in California at the time and there was no exposure[?] So don't you have to come in and prove to get certified that everybody was actually there at the time? The answer is, ["]No, you don't.["]
Ms. Cross: That is correct.

*522 The Court: Okay. How does this differ from that? It's a decision on the merits and a defense on the merits as to whether or not there was consent.
Ms. Cross: Sure. It's different than that because it goes to the heart. I mean, the only way you can get an unsolicited fax
The Court: Well, as does my example go to the heart[;] if [there's] no exposure, there's no liability.
Ms. Cross: There's alsoif there's no consent (sic), there's no TCPA claim, and to determine whether each of the four hundred and sixty-one people are a member of the class, I guess
The Court: If there's no exposure, there's no 2315 claim.
Ms. Cross: You still have to ask the question. You still have to ask the question.
The Court: If I take your theory of denying certification based on that, one would never be able to certify a class and go forward to test the issue.
Ms. Cross: Sure.
The Court: The question for me is not, are there some individuals that can be kicked out. That's up to you, maybe there are at the end of the day, but are there a significant number of legitimate claims with the same damages or similar damages under the same or similar conditions so as to certify the class.
Ms. Cross: I think
The Court: Class actions all the time get people kicked out after certification. The issue is not one ofI'm not going to test whether they got consent or not here. The question is, are there a significanthave they shown me there's a significant number to allow for certification of the class[.][T]hen you can jump on it all you want on the merits, but I don't know that I necessarily agree that your interpretation of 591(C) is consistent with what you're asserting it to be with regard to the consent issue.
Although the federal rules of procedure do not include a provision that is the equivalent of Louisiana's Article 591(C), similar arguments were presented to Judge Brady in a TCPA class action case in the United States District Court for the Middle District of Louisiana. That case involved the transmission of "thousands of fax advertisements to fax numbers in Louisiana" by Vision Lab on behalf of Biopay, LLC. In Gene & Gene. LLC v. Biopay, LLC, 240 F.R.D. 239, 246 (M.D.La.2006), the court stated:
... Biopay has argued that defining the class as persons who have received unsolicited faxes is a circular argument that would require the court to first determine if the recipient had received an unsolicited fax.... [T]he defendants contend that determining whether a particular fax was unsolicited is "inherently individualized" because this court would have to inquire into the particular circumstance of each transmission.
However, adopting the defendants' arguments would present several problems for this court. First, ... such arguments would preclude class certification on virtually any claim.
* * *
Defendants have suggested that defining the class as all persons who have received unsolicited faxes would go to the heart of the merits of the case. These fears appear to be unfounded. The cases that have found commonality in TCPA complaints have taken a different viewpoint. In those cases, courts have concluded that certifying a class of persons who have received unsolicited faxes does not reach the merits of the claim, rather it is "merely setting the *523 boundaries of the class." (Footnotes and citations omitted).
Gene & Gene, LLC, 240 F.R.D. at 243. Finding that all other requirements for certification of a class action were met, the court granted certification. Id. at 247.
We agree with Judge Brady's analysis and that of the district court in this case. The fact that, following certification, some putative members of the class will eventually be found to have consented to the receipt of the GH fax transmissions does not preclude certification of the class as recipients of unsolicited faxes from GH. For these reasons, we find no legal error in the court's decision to certify the class in this case.

CONCLUSION
Based on the foregoing, we find no manifest error in the court's factual findings in this case and no abuse of discretion in its decision to certify the class. Moreover, we find no legal error, and therefore, we affirm the judgment certifying the class in this case. All costs of this appeal are assessed to GH and Farm Bureau.
AFFIRMED.
KUHL, J., concurs and assign reasons.
KUHN, J., concurring.
I write separately to underscore that in this review we do not address the merits of the case or suggest the likelihood of plaintiffs' success on the merits. The sole issue before us is simply whether the technical requirements for use of the procedural device of a class action have been met. Because they have, I concur in the result.
NOTES
[1] Vision Lab Telecommunications, Inc. (Vision Lab) was also added as a defendant, but all claims against it were later dismissed.
[2] The date on the judgment is incorrectly written as January 3, 2006.
[3] An appeal may be taken as a matter of right from an order or judgment granting or denying certification of a class. See LSA-C.C.P. art. 592(A)(3)(b).